UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTUR ZAWADA and NASHAT FARHA,
individually and on behalf
of all others similarly situated,

Case No.: 16-cv-11334

          Plaintiffs,

v.

UBER TECHNOLOGIES, INC. and
RAISER, LLC,

          Defendants.

_____/

**COLLECTIVE AND CLASS ACTION
COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Artur Zawada and Nashat Farha ("Plaintiffs" and "drivers"), individually and on behalf of all other individuals who have worked or are currently working in the State of Michigan as drivers for Defendants Uber Technologies, Inc. and Raiser, LLC (collectively, "Uber" or "Defendants"), now file this collective action pursuant to 29 U.S.C § 216(b) violation of the Fair Labor Standards Act, and class action pursuant to Federal Rule of Civil Procedure 23 against Defendants, and in support allege as follows:

## I.     INTRODUCTION

1.     Uber is a multinational on-demand mobile taxi service. It develops and markets its mobile application, which allows customers with smartphones to

1

submit a ride request, which is then routed the locally available Uber drivers. Much like a taxi service, the Uber drivers use their own cars to pick up their customers for transportation to their requested destinations. According to Uber, as of today, the Uber service is available in 403 cities across the world.

2.     Uber is estimated to be worth over $50 Billion USD. Uber's model of creating a vast pool of cheap and convenient transportation through use of its mobile application has led to its tremendous success. However, these record numbers have come at a cost to the most critical component of its business: The driver. While Uber is quickly turning into a dominant player in the logistics market and realizing record revenues, the unfortunate Uber driver is stuck footing the bill. How? It's simple. Uber unlawfully misclassifies its drivers as independent contractors when in fact it controls them as employees. By doing so, Uber is able to exert unprecedented leverage over the drivers, thereby depriving them of benefits that they would otherwise be rightfully entitled to as employees.

3.     This lawsuit is brought by Plaintiffs and other current and former Michigan Uber drivers against Defendants for violations of Michigan and Federal law, including, but not limited to:

    a. Failing to remit the drivers the gratuities that Uber improperly retains for itself;

    b. Misclassifying the drivers as independent contractors, when in fact they are employees under state law, thereby causing negative tax implications, and depriving them of statutorily required benefits

2

including minimum wage, overtime pay, workers' compensation, and health insurance ;

c.  Failing to remit the drivers their expenses (e.g. mileage, gas) for the use and maintenance of their cars.

d.  Failing to offer insurance to employees pursuant to the Affordable Care Act;

e.  Engaging in unfair methods of competition and unfair or deceptive acts or practices;

4.  Plaintiffs seek damages and other appropriate equitable and injunctive relief on behalf of themselves and other similarly situated aggrieved individuals who have worked for or who are currently working for Defendants as Uber drivers in the State of Michigan.

## II.  JURISDICTION AND VENUE

5.  Plaintiffs bring this action alleging violations of various Michigan and Federal statutes and is based on various other common law causes of action. This Court has federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331. Upon information and belief, jurisdiction is also based on 28 U.S.C. §1332(d), the Class Action Fairness Act since Defendant Uber is a Delaware corporation with its principal place of business in California and, upon the original filing of this Complaint, members of the putative plaintiff class (which exceeds 100) resided in the State of Michigan and the amount in controversy exceeds the sum of value of $5,000,000.

3

6.      The Court also has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. §1367(a).

7.      Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. §1332(a) and (b) because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.

8.      Defendants are subject to personal jurisdiction in this Court because, among other things, they have engaged in systematic and continuous contacts with this District by virtue of their business activities.

9.      Venue is proper within this District under 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to class members residing in this District, and the Defendants are residents of this District under 28 U.S.C. §139l(c)(2) because they are subject to personal jurisdiction in this District.

III.    THE PARTIES

A. The Plaintiffs

Artur Zawada

10.     Plaintiff Artur Zawada ("Mr. Zawada") is a citizen of the State of Michigan, residing in Ann Arbor, Washtenaw County, Michigan.

11.     Mr. Zawada started working as an Uber driver in 2015.

12.     Mr. Zawada is currently not working as an Uber driver.

4

13.     As an Uber driver Mr. Zawada provided transportation services with his vehicle on behalf of Uber to customers in the southeast Michigan area.

14.     At all relevant times prior to the filing of this Complaint, Mr. Zawada and all other similarly situated Uber drivers were damaged by Defendants' failures to comply with state and federal law as further set forth in this Complaint.

Nashat Farha

15.     Plaintiff Nashat Farha ("Mr. Farha") is a citizen of the State of Michigan, residing in Ann Arbor, Washtenaw County, Michigan.

16.     Mr. Farha started working as an Uber driver in 2015.

17.     Mr. Farha is currently working as an Uber driver.

18.     As an Uber driver Mr. Farha provides transportation services with his vehicle on behalf of Uber to customers in the southeast Michigan area.

19.     At all relevant times prior to the filing of this Complaint, Mr. Farha and all other similarly situated drivers were damaged by Defendants' failures to comply with state and federal law as further set forth in this Complaint.

**B. The Defendants**

Uber Technologies, Inc.

20.     Defendant Uber Technologies, Inc. is a Delaware corporation with its principal place of business located in San Francisco, California. At all relevant times, it was authorized to do business in the State of Michigan. It may be served

with process by serving its registered agent for service at: The Corporation Company, 30600 Telegraph Road Suite 2345 Bingham Farms, Michigan 48025.

Raiser, LLC

21.     Defendant Raiser, LLC is a subsidiary of Uber Technologies, Inc. (collectively, "Uber" or "Defendants") and is its equivalent for purposes of this Complaint. It is authorized to conduct business and does conduct business in the State of Michigan.  It may be served with process by serving its registered agent for service at: The Corporation Company, 30600 Telegraph Road Suite 2345 Bingham Farms, Michigan 48025.

IV.     **GENERAL ALLEGATIONS**

A.     **What is Uber?**

22.     Defendant Uber is transportation service that allows riders to request transportation through their smartphones.

23.     To its customers, Uber operates much like a taxi cab service, and to Uber drivers, the company operates as computerized dispatch center directing them to said customers.

24.     The process begins with the customer downloading the Uber software application ("App") on his or her smartphone. Once downloaded, the customer inputs, among other things, his or her debit or credit card information, which is stored by Uber for future billing.

6

25.     In order to request a ride, the customer must log into the App. The App then locates the customer through the Global Positioning System ("GPS") software on the customer's mobile phone. The customer can either request a ride at his or her current location, or can manually set another location for pickup. After requesting a ride, the customer may elect to cancel his or her request.

26.     Using the same application, Uber then directs one of its drivers to transport said passenger to his or her requested destination. The driver uses his own version of the App to accept the assignment to pick up and transport the customer. After the transportation is completed, Uber automatically charges the customer his or her fare through the App using the previously stored credit information.

27.     The key distinction between Uber and a traditional taxi cab service is that the smartphone app removes the question of *when* the ride will actually arrive. The customer also can use the App to follow the location of the driver, to learn the anticipated arrival time, and to receive an alert when the driver has arrived at the pickup point.

28.     At no time is there an exchange of money between a customer and his or her Uber driver. In fact, Uber rules strictly prohibit Uber drivers from accepting any type of payment from its customers.

29.     Customers and drivers are encouraged to rate the ride experience from their perspective using the App.

30.     The Uber driver is paid directly by Uber for a portion of the fare collected from the customer, which is determined solely by Uber. Uber submits direct deposits to the Uber driver's account on a weekly basis. The direct deposit is accompanied by a statement with details on all rides provided, the fares, the fees kept by Uber and the actual earnings of the driver.

31.     In addition to the earnings statement, Uber also generates a weekly review for each Uber driver, informing them of their performance in a given week in terms of indexes such as number of trips accomplished, "hours online," "fare/hour," acceptance rate and driver rating.

32.     In order to become drivers, Plaintiff and others similarly situated must apply for and be accepted by Uber pursuant to the terms and conditions of the agreements provided by the company. These agreements are unilaterally updated by Uber from time to time. A driver may not work for Uber without consenting to these agreements.

33.     Uber drivers may use their own cars to provide rides, but every car must be approved by Uber prior to a driver commencing work.

34.     Uber provides its drivers with insurance if the driver is involved in an accident while driving for Uber.

8

**B.     How Uber Misleads its Customers and Misappropriates Gratuities and Other Fees from its Drivers**

35.     One of Uber's key selling points is that passengers do not need to tip their drivers because gratuity is included in the fare. However, Uber drivers are not compensated for gratuities, and Uber specifically instructs its drivers via a training video to refuse a cash gratuity if offered.

36.     Upon information and belief, Uber has retained and continues to retain all gratuities intended for its drivers, such as Plaintiffs and those similarly situated. It is customary in the taxi cab industry for customers to leave approximately a 20% gratuity for drivers. Thus, where the amount of the gratuity is not specified, reasonable customers would assume that the gratuity is in the range of 20% of the total fare.

37.     As a result of Uber's conduct and actions in leading customers to believe that there is no need to tip the drivers because gratuity is included in the cost of its service, but then refusing to remit the total proceeds of the gratuity to the drivers, Uber has deprived its drivers of payments to which they are entitled, and to which reasonable customers would have expected the drivers to receive.

38.     Uber also represents to customers on its website FAQs that a surcharge or fee may be charged by the driver for costs or inconveniences such as having a long return trip after drop-off. This statement leads a reasonable customer to believe that if a driver drops him or her off and then has a long return trip before

9

the driver can pick up another customer, said driver will be adequately compensated for such inconvenience. Upon information and belief, Uber does not reimburse drivers when such fees are incurred by and assessed to the customer.

### C. How Uber Misclassifies its Drivers as Independent Contractors, Thereby Causing Drivers to Lose Benefits and to Incur Additional Expenses

39.    Uber classifies its drivers, including Plaintiffs and all those similarly situated, as "independent contractors" when in fact they are employees under Michigan law.

40.    Uber does not just let anyone drive for the company. The company is deeply involved in marketing the transportation services is sells, completing background checks on prospective drivers, regulating and monitoring driver performance, including driver cancellations, ratings from customers, and hours spent online. All drivers must abide by all of Uber's uniform rules, regulations, policies, all of which are not subject to negotiation.

41.    Moreover, Uber unilaterally sets the fare to be charged to the customer and the percentage thereof kept by the driver. There is no negotiation or input from the drivers. The drivers must submit, without input, to the surge pricing scheme, which is fully controlled and managed by Uber.

42.    By not allowing drivers to directly solicit customers (e.g. allowing drivers to make themselves available to specific customers for future reservations)

Uber is claiming a proprietary interest in its customers; making it more than just an intermediary between the customer and the driver as it claims.

43.     Prior to working for Uber, drivers must watch a training video directing them how to interact with Uber's customers. Drivers are even instructed on such simple tasks as how to pick up a customer with their car and what type of music to play on the radio.

44.     Uber has the sole and absolute discretion to grant a complaining customer a fare reduction, and if an adjustment is granted then the driver must accept the reduced payment. In fact, drivers must take a reduced payment in the event a customer disagrees with the route of travel, which is solely determined by Uber's navigation software.

45.     Drivers have no control over how their services are marketed by Uber. To the customer, the driver is an "Uber" driver.

46.     Uber drivers are graded, and are subject to termination, based on their failure to adhere to certain Uber prescribed requirements involving, among other things, conduct with customers, the cleanliness of their vehicles, their timeliness in picking up and dropping off customers, and even what they are allowed to say to Uber customers.

47.     Uber maintains quality control by monitoring driver's ratings. All drivers must maintain an average customer star evaluation of at least 4.5 out of a

11

possible 5 stars. If a driver falls below the 4.5 rating on any given week, Uber provides directions on how to improve said rating. If a driver fails to maintain the minimum rating, Uber will suspend the driver's ability to use the App to continue working.

48.     Uber retains the right to hire and fire its drivers in its sole discretion. It retains the right to terminate the App from the driver's phone or to otherwise block the driver from using the App, which effectively gives Uber the ability to prevent its drivers from picking up customers, working, and earning income.

49.     In addition, the fact of the matter is that Uber is in the business of providing car service to customers, and that is the service that Uber drivers provide. The drivers' services are fully integrated into Uber's business, and without the drivers, Uber's business model would be impossible.

50.     Uber's misclassification causes drivers to lose benefits such as: itemized wage statements, minimum wages, overtime premium pay, health insurance, workers compensation and paid time off.  The fact is that Uber does not pay its drivers a wage for each hour, or portion thereof, that they work. Instead, Uber pays its drivers using a formula, derived and determined solely by Uber, based on and related in some way to the amount Uber receives from its customers. Again, the driver has absolutely no role in determining their pay rate.

51.     The consequences of the above described practice are, without limitation, that drivers: (1) are not paid for all of the hours that they actually work; (2) are not paid at least the minimum wage required by Federal and State law for each hour worked; and, (3) are not paid overtime compensation for hours that they actually work in excess of 40 hours in one week.

52.     Finally, Uber's practices also force its drivers to bear many of the operating expenses of their employment, including: fuel, licensing fees, mobile phone expenses, car repairs, insurance and lease and financing payments. These expenses are incurred in the scope and course of the driver's employment with Uber, and for the benefit of Uber's business.

## V.     CLASS ALLEGATIONS

53.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief and monetary damages on behalf of a proposed class (the "Rule 23 Class" or "Class") defined as follows:

> All individuals who are currently working or have worked as drivers (including Uber Black, UberX, UberXL) for Defendants within the State of Michigan.

54.     Subject to additional information obtained through further investigation and discovery, the definition of the Class may be expanded or narrowed by amendment or amended complaint.

55.     The members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs believe that the members of the Class exceed one hundred individuals. The exact number of the members of the Class is unknown to Plaintiffs at this time, and can be ascertained only through appropriate discovery.

56.     A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty that will be encountered in the management of the claims advanced by the Class that would preclude class certification.

57.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

58.     The members of the Class are ascertainable in that, upon information and belief, their names and addresses can be identified in business records maintained by Defendants.

59.     There are questions of law or fact common to the Class, including, but not limited to:

   a. Whether Defendants have unlawfully misclassified the members of the Class as independent contractors, thereby depriving them of benefits they would be otherwise entitled to as employees.

14

b. Whether members of the Class have suffered damages based upon Uber's deceptive representation to customers that tips are included but not distributing them to the drivers;

c. Whether Defendants' failure to pay members of the class the benefits owed to them as employees violates Michigan and Federal law;

d. Whether Defendant's conduct constitutes deceptive business acts and practices;

e. Whether Defendants unlawfully required members of the Class to bear the expenses of their employment, such as expenses for their vehicles, gas, and other automobile related expenses.

f. Whether, as a result of Defendant's material breach, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or value;

g. Whether Defendants were unjustly enriched; and

h. Whether Plaintiffs and Class members are entitled to monetary damages.

60. These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting only individual members.

61. Plaintiffs' claims are typical of the claims of the Class because all members of the Class suffered injury in the same way as a result of Defendants' wrongdoing, and the claims of each member arise out of the same nucleus of operative facts and are based on the same legal theories.

62.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs' counsel are unaware of any conflicts of interest between the class representatives and absent class members with respect to the matters at issue in this litigation; the class representatives will vigorously prosecute the suit on behalf of the Class. Further, Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation.

63.     Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent the Class.

## VI.    FLSA COLLECTIVE ACTION ALLEGATIONS

64.     Plaintiffs bring this collective action under the Fair Labor Standards Act ("FLSA"), as individuals and on behalf of all other persons similarly situated who worked hours for which they were not paid at least minimum wage ("FLSA Class 1") or worked overtime but were not paid for those hours in accordance with the FLSA ("FLSA Class 2") (collectively the "FLSA Classes"), at any time during the period from three years the preceding the filing of this Complaint to the present (the "Class Period").

65.     At the earliest time possible, Plaintiffs seek permission to send a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all class

16

members who are presently, or have at any time during the three years immediately preceding the filing of this action, driven for Defendants.

66.     The number of persons in the proposed FLSA Classes herein is so numerous that joinder of all such persons would be impracticable. While the exact number and identities of all such persons are unknown to Plaintiffs at this time and can only be obtained through appropriate discovery, Plaintiffs are informed and believe, and on that basis allege, that the proposed FLSA Classes herein includes over 1,000 persons.

67.     Plaintiffs and the FLSA Class they seek to represent are similarly situated, have substantially similar contract agreements and pay provisions and are subject to Defendants' common practice, policy or plan of failing to keep accurate records and failing to pay minimum wage and overtime in violation of the FLSA.

68.     A collective action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented udder the FLSA.

69.     Common questions of law and fact exist in this case with respect to the proposed FLSA Classes which predominate over any questions affecting only individual members of the same and which do not vary between members.

70.     The common questions of fact involved in this case include, without limitation, whether each member of the proposed FLSA Classes herein have: (1)

17

worked hours during the Class Period for which they have not been paid at least the minimum wage required by Federal law; and, (2) worked hours in excess of 40 in a week during the Class Period but have not been paid premium overtime compensation as required by the FLSA.

71.     The common questions of law involved in this case include, without limitation: (1) whether members of the FLSA Classes performed labor for Defendants as employees or as independent contractors; (2) whether Defendants have violated the FLSA by failing to pay its driver employees at least the legally required minimum wage for each and every hour worked; (3) whether Defendants have violated overtime compensation requirements under the FLSA by failing to pay its driver employees for hours worked in excess of 40 in a week; and, (4) whether Plaintiffs and those other persons similarly situated are entitled to general and/or special damages as a result of any of the legal violations complained of herein, and the nature of such damages.

72.     The claims of the named Plaintiffs in this case are typical of those of the other members of the FLSA Classes which they seek to represent, in that, among other things, Plaintiffs and each member of the FLSA Classes have sustained damages and are facing irreparable harm because of, and arising out of, a common course of conduct engaged in by Defendants as complained of herein.

73.     The named Plaintiffs herein will fairly and adequately represent and protect the interests of the members of the proposed FLSA Classes which they seek to represent. Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation.

74.     Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent the FLSA Classes.

75.     The relief sought in this action is necessary to restore to members of the proposed FLSA Classes the money and property which Defendants have illegally acquired through the unlawful treatment of each class member as described herein.

## VII.   CLAIMS FOR RELIEF

### COUNT I
### (FLSA - Failure to Pay Minimum Wages)
### FLSA Class 1 Only

76.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

77.     Defendants willfully and uniformly misclassified Plaintiffs and all other members of FLSA Class 1 as independent contractors when in fact each such drivers were and/or are employees of Uber.

19

78.   The FLSA provides that any employee who receives less than the legal minimum wage applicable to the employee is entitled to recover in a civil action the difference between what the employee was paid and the amount the employee should have been paid, known as back pay, and an equal amount as liquidated damages, plus attorney's fees and court costs.

79.   The FLSA provides that the applicable minimum wage that an employee is entitled to is the higher of the Federal minimum wage and the applicable State minimum wage.

80.   Defendants have failed to pay Plaintiffs, and all other FLSA Class 1 members similarly situated, at least the legally required minimum wage for some portion of the hours that each such person worked as a driver for Uber during the Class Period.

81.   Defendants' failure to pay Plaintiffs, and such other FLSA Class 1 members, at least the minimum wages as required by law, violates the provisions of the FLSA.

82.   By virtue of Defendants' unlawful failure to pay minimum wages to Plaintiffs and all other FLSA Class 1 members when due, all such persons have suffered, and continue to suffer, damages in amounts which are presently unknown to Plaintiffs but which will be ascertained according to proof at trial.

83.     Pursuant to the FLSA, Plaintiffs and all other similarly situated FLSA Class 1 members are entitled to recover from Defendants the full balance of any and all unpaid minimum wages, plus attorney's fees and court costs.

**COUNT II**
**(FLSA - Failure to Pay Minimum Overtime Wages)**
**FLSA Class 2 Only**

84.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

85.     The FLSA provides that employees shall not be employed more than 40 hours in one week, unless they receive additional compensation beyond their regular rate of pay in amounts specified by law.

86.     The FLSA provides that an employee who has not been paid overtime compensation may recover, in a civil action, the unpaid balance of the full amount of such overtime compensation, liquidated damages equal to the full amount of unpaid overtime compensation or an award of prejudgment interest, plus attorney's fees and court costs.

87.     At all times relevant hereto, from time to time, Plaintiffs, and all other members of FLSA Class 2 similarly situated, have worked more than 40 hours in a week, as drivers for Uber.

88.     At all times relevant hereto, Defendants have failed to pay Plaintiffs, and to all other similarly situated members of FLSA Class 2 members, premium

21

overtime compensation for the hours they have worked in excess of 40 hours in one week.

89.    Defendants have failed and refused, and continue to fail and refuse, to pay Plaintiffs and all other similarly situated members of FLSA Class 2 the amounts owed by Defendants for unpaid overtime compensation.

90.    By virtue of Defendants unlawful failure to pay premium overtime compensation to Plaintiffs and all other similarly situated members of FLSA Class 2, all such persons have suffered and continue to suffer, damages in amounts which are presently unknown to Plaintiffs but which will be ascertained according to proof at trial.

91.    Plaintiffs, and all other similarly situated members of FLSA Class 2, are also entitled to recover the full amount of unpaid overtime compensation, plus attorney's fees and court costs.

## COUNT III
## (BREACH OF CONTRACT)
## Rule 23 Class Only

92.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

93.    Through its conduct, as set forth above, Defendants have an implied-in-fact contractual relationship with customers, pursuant to which the customers pay gratuity for the benefit of the drivers. Defendants have breached that contract

by failing to remit to the drivers the total proceeds of all such gratuities. The drivers have suffered from this breach, as they are third-party beneficiaries of the contractual relationship between Defendants and the customers.

94.   Defendant's failure to pay Plaintiffs and the Class as promised constitutes material breach of such implied-in-fact contract.

95.   Plaintiffs and the Class members have been damaged by Defendants' actions and are entitled to be compensated for resulting damages.

## COUNT IV
## (UNJUST ENRICHMENT)
### (Rule 23 Class Only)

96.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

97.   Plaintiffs and other members of the Class conferred a benefit on Defendants.

98.   Defendants had knowledge that this benefit was conferred upon them.

99.   However, Defendants have breached their agreement with Plaintiffs and the Class by failing to make full reimbursement of all tips collected from the customers. Such breaches of the agreement have caused the Class damages.

100.  Defendants have been unjustly enriched at the expense of Plaintiffs and the Class members, and their retention of this benefit under the circumstances would be inequitable. Defendants should be required to make restitution.

## COUNT V
## (UNFAIR COMPETITION UNDER MICHIGAN LAW)
### Rule 23 Class Only

101.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

102.   Defendant's conduct constitutes unfair competition under Michigan common law, which prohibits unfair and unethical trade practices that are harmful to one's competitors or to the general public.

103.   Plaintiffs and Class members have suffered damages as a result of Defendants improperly withholding gratuities, cleaning and cancellation fees that customers expected them to receive.

104.   Plaintiffs and Class members seek declaratory and injunctive relief for Defendant's unlawful conduct and to recover restitution.

## COUNT VI
## (TORTIOUS INTERFERENCE WITH A
## BUSINESS RELATIONSHIP OR EXPECTANCY)
### Rule 23 Class Only

105.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

106.   Defendants interfered with the continuing business relationship between drivers and customers, whereby customers would have paid gratuity to drivers, including Plaintiffs, but for Defendants' intentional and improper interference.

24

107.   Defendants' intentional and improper interference intends to invade the business relationship of Plaintiffs and the customers who desire to submit gratuities.

108.   Defendants' unlawful conduct has and continues to damage Plaintiffs and other Class members.

## COUNT VII
## (INDEPENDENT CONTRACTOR MISCLASSIFICATION)
### Rule 23 Class Only

109.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

110.   Despite the existence of an agreement indicating that Plaintiffs and other drivers are independent contractors, Defendants' treatment of and control over them indicate that they are employees who should be protected by wage and hour laws.

111.   Defendants' misclassification deprives the Plaintiffs of many benefits that they would otherwise be entitled to, including, but not limited to, expense reimbursement, wage protections, affordable health insurance pursuant to the Affordable Care Act, and workers' compensation benefits.

112.   Defendants' unlawful conduct has and continues to damage Plaintiffs and other Class members.

113.   As a result of this unlawful conduct, Plaintiffs have suffered damages, including additional tax debt, and additional time and expenses associated with any necessary corrections to their returns.

## COUNT VIII
## (VIOLATION OF INTERNAL REVENUE CODE)
### Rule 23 Class Only

114.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

115.   By failing to properly characterize Plaintiffs and drivers as employees instead of as independent contractors, and account for, and pay proper FICA taxes on Plaintiffs' behalf as required by the IRS during the course of their employment, Defendants willfully filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

116.   Under the Internal Revenue Code, 26 U.S.C. § 7434(a), "[if] any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."

## COUNT IX
## (VIOLATION OF MICHIGAN'S WORKFORCE OPPORTUNITY
## WAGE ACT, MCL §408.11, *et seq.*)
### Rule 23 Class Only

117.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

26

118.   Defendants, Plaintiffs and the Class members are "employers" and "employees" for the purposes of the Michigan Workforce Opportunity Wage Act, § 408.412. ("WOWA").

119.   WOWA § 404.413 states that an "employer shall not pay any employee at a rate that is less than prescribed in this act."

120.   Thus, all putative Class members are entitled to their full minimum wages pursuant to Michigan's wage and hour laws. WOWA §§ 408.414 and 408.414d.

121.   Defendants violated Michigan law, including WOWA §§ 408.414 and 408.414d, by regularly and repeatedly failing to compensate Plaintiffs and the Class at the appropriate minimum wage as described in this Complaint.

122.   As a result, Plaintiffs and the Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Class are entitled to recover unpaid wages owed, plus all damages, fees and costs, available under WOWA, MCL § 408.411, et seq.

**VIII.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the putative FLSA Classes and Rule 23 Class, pray for an order from this Court:

A. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with respect to Counts III through IX as outlined above;

27

B. Certifying this action as a collective action pursuant to 29 U.S.C. § 216(b)  with respect to Counts I and II; and issuing notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the FLSA Classes, apprising them of the pendency of this action and permitting them to assert timely claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b); and equitably toll the statute of limitations from the date of the filing of this Complaint until the expiration of the deadline for filing consent to sue forms under 29 U.S.C. § 216(b);

C. Designating Plaintiffs as representatives in both the collective action and the class action set forth above;

D. Entering an injunction prohibiting Defendants from continuing the illegal activities alleged herein;

E. Entering Judgment in favor of Plaintiffs, the Rule 23 Class and the FLSA Classes and against Defendants for any and all actual, general, incidental, consequential, statutory, punitive, liquidated, compensatory, punitive, and treble damages in an amount to be determined at trial;

F. Awarding pre- and post-judgment interest;

G. Awarding reasonable costs and expenses of suit, as well as reasonable statutorily mandated attorneys' fees;

H. Granting Plaintiffs, the Rule 23 Class, and the FLSA Classes such other and further as the Court deems just and necessary.

## IX.   JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury of all of the claims asserted in this Complaint that are so triable.

Respectfully submitted,

**HOOPER HATHAWAY, P.C.**

Dated:  April 12, 2016          BY:     /s/ Oscar A. Rodriguez
                                                 Bruce T. Wallace (P24148)
                                                 William J. Stapleton (P38339)
                                                 Oscar A. Rodriguez (P73413)
                                                 Adam M. Linkner (P78784)
                                                 126 South Main Street
                                                 Ann Arbor, MI  48104
                                                 (734) 662-4426
                                                 bwallace@hooperhathaway.com
                                                 wstapleton@hooperhathway.com
                                                 orod@hooperhathaway.com
                                                 alinkner@hooperhathaway.com
                                                 Attorneys for Plaintiffs