UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR ZAWADA and NASHAT FARHA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC. and RAISER, LLC,

Defendants.

Case No. 16-cv-11334
Honorable Laurie J. Michelson
Magistrate Judge Stephanie Dawkins Davis

**OPINION AND ORDER GRANTING MOTION TO DISMISS THE COMPLAINT, COMPEL ARBITRATION, AND STRIKE CLASS ALLEGATIONS [17]**

Plaintiffs Arthur Zawada and Nashat Farha utilized a smartphone application created by Defendant Uber Technologies, Inc. to connect with customers looking for transportation. They also received payment from their customers through the app. In order to use the technology, Plaintiffs had to "Agree" to a contract with Defendant Raiser, LLC that was presented to them on their smartphones through the app. This contract included an arbitration provision, by which the parties agreed to submit any disputes to arbitration rather than bringing suit in court. The contract also included a conspicuously-presented opt-out provision, by which Plaintiffs could have avoided arbitration. But they chose not to opt out. Nevertheless, when Plaintiffs became dissatisfied with Uber's payment practices, they filed suit in this Court. Because the arbitration provision contains a clear and unmistakable delegation provision by which the parties agreed to even arbitrate whether the arbitration controversy is arbitrable, the Court must compel arbitration. Plaintiffs' argument that the provision is unconscionable does not change that result.

## I. BACKGROUND

Defendant Uber Technologies, Inc. created an on-demand transportation software application ("app") that operates through smartphones. (R. 15, ¶¶ 1, 22.) Defendant Raiser, LLC is Uber's wholly-owned subsidiary. (R. 18, ¶ 21.) Customers use their smartphones to request rides through the Uber app. (R. 15, ¶ 1.) The request is routed to the locally-available Uber drivers, who use their own vehicles to pick up and transport customers. (R. 15, ¶ 1.) The customer pays through the smartphone app, and the driver "is paid directly by Uber for a portion of the fare collected from the customer[.]" (R. 15, ¶ 30.) Plaintiffs Artur Zawada and Nashat Farha were two such drivers in Michigan. Zawada worked as an Uber driver in 2015; Farhat began working as an Uber driver in 2015 and is still employed with Uber. (R. 15, ¶¶ 10–18.)

When drivers seek to utilize Uber's software to begin transporting customers, they must enter into the "Raiser Software Sublicense & Online Services Agreement" ("Agreement"). (R. 17-5, PID 291.) To enter the Agreement, the driver must log in to the Uber app, sign up as a driver, and click a hyperlink that is then presented on the screen. (R. 17-5, PID 291–92; R. 17-5, PID 298–99.) Clicking the link opens the Agreement, which can then be reviewed in its entirety by scrolling through the screen. (R. 17-5, PID 292.) There are no time limitations to reviewing the Agreement. (R. 17-5, PID 292.) To advance past the "Agreement" screen, the Uber driver must first click "YES, I AGREE" and then click "CONFIRM." (R. 17-5, PID 292.) After clicking the "agree" and "confirm" buttons, drivers are sent to the Driver Portal in the app, where they can still access the Agreement at any time. (R. 17-5, PID 293.) As relevant here, the Agreement contains an Arbitration Provision. (R. 17-5, PID 302, 326.) Once the driver accepts the Agreement, he or she may still opt out of the Arbitration Provision if he or she so chooses. (R. 17-5, PID 294.) Uber Operations Specialist Michael Coleman avers that "numerous" drivers

opted out of the Arbitration Provision in the timeframe in which Plaintiffs were Uber drivers. (R. 17-5, PID 294.)

Farha and Zawada each entered the November 10, 2014, and later, the December 10, 2015 versions of this agreement. (R. 17-5, PID 292.) Farha's account was activated on September 1, 2015, and that same day, he accepted the November 10, 2014 version of the agreement. (R. 17-5, PID 293.) Zawada's account was activated on November 10, 2015, and on that day, he accepted the November 10, 2014 version of the agreement. (R. 17-5, PID 294.) Uber circulated a new version of the agreement via the app in December 2015. (R. 17-5, PID 295.) Uber Operations Specialist Michael Coleman avers that neither Farha nor Zawada opted out of the Arbitration Provision in either agreement within 30 days of accepting it. (R. 17-5, PID 294.)

Plaintiffs say that Uber's success has come at a price to its drivers: "Uber unlawfully misclassifies its drivers as independent contractors when in fact it controls them as employees." (R. 1 ¶ 2.) Instead of seeking arbitration to resolve this dispute, however, Plaintiffs filed suit in this Court on April 12, 2016. (R. 1.) Plaintiffs seek to represent a class of Uber drivers in the state of Michigan. (R. 18, ¶ 65.) They allege that Uber's business practices have deprived them of fair compensation. (*See generally* R. 18.) Defendants now seek to compel arbitration in this matter based on the Arbitration Provision. (R. 17.) The motion is fully briefed and the Court heard argument on December 15, 2016.

The Court is not alone in addressing this arbitration issue. Similar lawsuits have been filed across the country. At the time of the filing of this motion, every federal court save one in the Northern District of California had granted Defendants' motions to compel arbitration. Thus, Plaintiffs urged this Court to follow the California ruling. But the Ninth Circuit recently reversed that ruling, leaving little support for Plaintiffs' arguments.

## II. ANALYSIS

The Federal Arbitration Act ("FAA") "creates federal substantive law requiring the parties to honor arbitration agreements[.]" *Ford v. Hamilton Inv.*, 29 F.3d 255, 257 (6th Cir. 1994). One section of the FAA provides,

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This section "'embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Even so, "[a]rbitration is a 'matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Therefore, "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

Before engaging in that inquiry, the Court pauses to address a threshold issue. The parties disagree as to whether the Court should examine the 2014 or the 2015 Raiser Agreement in its analysis. On the one hand, the 2014 Agreement contains a survival clause, which states that "Sections . . . 14 and 15 [the Arbitration Provision] shall survive the termination of this

Agreement." (R. 17-5, PID 313.) And Defendants have largely cited the 2014 Agreement in their arguments. On the other hand, Defendants say, "The validity of the December 2015 Arbitration Provision is being litigated in another Court. . . . [but that judge] terminated his injunction prohibiting enforcement of the December 2015 Arbitration Provision. Thus, Defendants can now enforce the December 2015 Arbitration Provision, making it the operative agreement with Plaintiffs." (R. 22, PID 448 n.3.)

Ultimately, whether the Court examines the 2014 Agreement or the 2015 Agreement, the language that operates to compel arbitration here is identical or functionally identical. And because the Court views the Arbitration Provision as severable from the rest of the contract, any changes in the rest of the contractual language from 2014 to 2015 would make no difference. The Court therefore cites to the appropriate section from both agreements, and where there are differences, explains why the differences are immaterial.

**A. Delegation Clause**

The Supreme Court "ha[s] recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.*

Still, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted, modifications in original). Aside from the "clear and unmistakable" requirement, which relates to the parties' "intent," a party could also

challenge the "validity" of the provision under § 2. *Rent-A-Ctr.*, 561 U.S. at 70–71. However, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*

Here, the 2014 and 2015 Agreements contain an identical delegation provision:

> [T]his Arbitration Provision is intended to apply to the resolution of disputes that would otherwise be resolved in a court of law or before a forum other than arbitration. . . . Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability, or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

(R. 17-5, PID 316, 342.) Defendants have invoked that provision. (R. 17, PID 251.) Plaintiffs make both types of challenges outlined in *Rent-A-Center*: they say that the parties did not clearly and unmistakably agree to arbitrate arbitrability (R. 20, PID 378) and, further, the delegation provision is unconscionable (R. 20, PID 380).

**1. Clear and Unmistakable**

Plaintiffs base their clear-and-unmistakable argument on the ruling in *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015). That case involved a similar lawsuit by Uber drivers in California. The contract between Raiser and those plaintiffs contained a delegation provision identical to the one at issue here. *Id.* at 1198. The court began, "The first (and often final) step in determining the validity and enforceability of a delegation clause is to decide whether the language of the delegation clause, read in context with other relevant contract provisions, unambiguously calls for the arbitration of gateway issues such as arbitrability." *Id.* Reading the delegation provision in conjunction with the other clauses in the 2013 and 2014 Agreements, the court concluded that there were "particularly obvious" inconsistencies between the delegation provision and (1) a "carve out" provision in the 2013 Agreement leaving the

"validity of the arbitration provision's class, collective, and representative action waivers," to a "court of competent jurisdiction" and (2) a venue provision in the 2014 Agreement. *Id.* at 1201. The court concluded that it could not resort to "standard rules of contract interpretation" to resolve the inconsistencies because "[i]f, as the Supreme Court requires, the language of the delegation clauses here was truly 'clear and unmistakable,' there would be no need to resort to rules of construction whatsoever." *Id.* at 1203 (citation omitted). Plaintiffs urge this Court to adopt *Mohamed*'s reasoning.

After the briefing in this case closed, however, the Ninth Circuit reversed the district court's determination regarding the delegation clause. *Mohamed v. Uber Techs., Inc.*, No. 15-16178, 836 F.3d 1102, 2016 U.S. App. LEXIS 16413, at *11 (9th Cir. 2016). The Ninth Circuit concluded that the conflicts the district court identified were "superficial" because "[t]he clause describing the scope of the arbitration provision was prefaced with '[e]xcept as it [i.e., the arbitration provision] otherwise provides.'" *Id.* The Court explained that this preface "eliminated the inconsistency between the general delegation provision" and the other provisions that the district court had held were inconsistent. *Id.*

Specifically, the district court had pointed to the "carve out" provision, which stated, "Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." *Mohamed*, 2016 U.S. App. LEXIS 16413 at *10. The Ninth Circuit's holding that this provision did not create inconsistency is reason enough for this Court not to follow the district-court opinion, but an additional reason is that the "carve out" only appears in the 2013 Agreement. The Ninth Circuit explicitly acknowledged that the

2014 Agreement did not contain the carve-out provision, *id.*, and the Court does not find the same carve-out clause in the 2015 Agreement (nor do Plaintiffs argue that there is one).

The Ninth Circuit further reasoned that the venue provision elsewhere was not in conflict with the delegation provision because "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Id.* (citation omitted). Accordingly, a court would be "required to enforce these agreements 'according to their terms' and, in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability, let an arbitrator determine arbitrability as to all but the claims specifically exempted by the 2013 Agreement." *Id.* at *15.

The Ninth Circuit's conclusion—that the delegation provision properly delegated questions of arbitrability to an arbitrator—is consistent with every other district court to reach the issue when examining the same or substantially similar Raiser agreements since *Mohamed*. *See Congdon v. Uber Techs., Inc.*, No. 16-cv-02499, slip op. at 4 (N.D. Cal. Dec. 8, 2016); *Micheletti v. Uber Techs., Inc.*, No. 15-1001 (RCL), 2016 U.S. Dist. LEXIS 137318 (W.D. Tex. Oct. 3, 2016); *Lee v. Uber Techs.*, No. 15 C 11756, 2016 U.S. Dist. LEXIS 140171 (N.D. Ill. Sep. 21, 2016); *Bruster v. Uber Tech., Inc.*, No. 15-cv-2653, 2016 WL 2962403 (N.D. Ohio May 23, 2016); *Suarez v. Uber Tech., Inc.*, No. 8:16-cv-166-T-30MAP, 2016 WL 2348706 (M.D. Fla. May 4, 2016); *Varon v. Uber Tech., Inc.*, No. MJG-15-3650, 2016 WL 1752835 (D. Md. May 3, 2016); *Sena v. Uber Tech. Inc.*, No. CV-15-02418, 2012 WL 1376445 (D. Ariz. Apr. 7, 2016); *but see Marc v. Uber Techs., Inc.*, No. 16-cv-579-FtM-99MRM, slip op. at 7 (M.D. Fla. Dec. 13, 2016) (holding that, on the narrow question of whether the arbitrator or the court should "enforce

the Agreement's class action waivers," the Agreement did "not clearly and specifically indicate the parties' intent to have the arbitrator decide if class-action claims are authorized.").

The Court agrees with the Ninth Circuit and these district courts for two reasons. First, the Court agrees with these courts that the arbitration clause must be construed independent from the remainder of the contract. "As a matter of substantive federal arbitration law, an arbitration provision is severable from the rest of the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Moreover, *Rent-A-Center* "extended the separability rule . . . to delegation provisions within arbitration agreements." *Law Offices of Daniel C. Flint, P.C. v. Bank of Am., N.A.*, No. 15-13006, 2016 U.S. Dist. LEXIS 49426, at *12 (E.D. Mich. Apr. 13, 2016). That is,

> Post-*Rent-A-Center*, the line has shifted. Now, the same contract, if it contains a delegation clause, is divided into: (1) the delegation clause; (2) the rest of the contract. Under this new system, if the contract contains a delegation clause, courts decide only if the delegation clause is valid and enforceable. Arbitrators decide claims relating to the underlying contract, plus those related to the rest of the arbitration clause.

*Sajay Rai v. Ernst & Young, LLP*, No. 09-13194, 2010 U.S. Dist. LEXIS 93196, at *10 (E.D. Mich. Sep. 8, 2010). Therefore, the Court examines the delegation provision separately from the rest of the contract in order to determine whether it "clearly and unmistakably" delegates arbitrability questions to the arbitrator. This is not the approach that the district court in *Mohamad* took, and the courts to reach the issue since have rejected *Mohamad*'s approach. *See, e.g.*, *Sena*, 2016 WL 1376445 at *4 ("The Court is not convinced that it may look beyond the four corners of the Arbitration Provision to find ambiguity, as the court did in *Mohamad*.").

Second, looking only to the delegation provision, the Court concludes that the parties' intent to delegate questions of arbitrability to the arbitrator was "clear and unmistakable." The provision says that matters including "the enforceability, revocability, or validity of the

Arbitration Provision or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." (R. 17-5, PID 316, 342.) Courts in this circuit have held similar language to be clear and unmistakable. *See, e.g.*, *Wynn v. Five Star Quality Care Tr.*, No. 3:13-cv-01338, 2014 U.S. Dist. LEXIS 77295, at *8 (M.D. Tenn. June 5, 2014) ("All challenges to the enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement."). And the district courts examining substantially similar or the same provision in other Raiser agreements found the provision to be a clear and unmistakable delegation. *Micheletti*, 2016 U.S. Dist. LEXIS 137318 at *6; *Lee*, No. 2016 U.S. Dist. LEXIS 140171 at *6; *Suarez*, 2016 WL 2348706 at *4; *Varon*, 2016 WL 1752835 at *7; *Sena*, 2016 WL 1376445 at *4.

For these reasons, the Court concludes that the delegation provision evinces a clear and unmistakable intent to delegate the question of arbitrability to the arbitrator.

**2. Unconscionability**

Although the Court has found that the delegation clause constitutes a clear and unmistakable intent to arbitrate arbitrability, the Court can still refuse to enforce the arbitration provision if it is unconscionable. *Rent-A-Ctr*, 561 U.S. at 72–74.

The parties' first dispute regarding unconscionability is whether Michigan or California law applies. On the one hand, the 2014 Agreement contains a choice-of-law provision specifying as follows:

> The interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction, and any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California.

(R. 17-5, PID 314.) The 2015 Agreement's choice of law provision similarly selects California law, but also clarifies that "[t]he choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the Federal Arbitration Act." (R. 17-5, PID 339.) Accordingly, Plaintiffs encourage the Court to apply California law to the unconscionability analysis. (R. 20, PID 367.)

However, as Defendants repeatedly observed in their briefing, the Arbitration Provision is severable from the rest of the contract and does not itself contain a choice of law provision. *Buckeye*, 546 U.S. at 445, 126; *see also Sena*, 2016 WL 1376445, at *4. Therefore, the Court applies Michigan's choice-of-law rules. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008).

Michigan courts have adopted the Restatement (Second) of Conflict of Laws approach for contract disputes. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 702 (1995). Therefore,

> In the absence of an effective choice of law by the parties . . . , the contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Uhl*, 512 F.3d at 302 (quoting Restatement (Second) of Conflict of Laws § 188(2) (1971)). Because the contract was signed and performed in Michigan, and plaintiffs live in Michigan, the Court will apply Michigan law. However, as discussed below, even if the Court were to apply California law, the result would be the same.

In Michigan, "[i]n order for a contract or contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present." *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 474 (2005). The same is true under California law.

*Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. 2015). "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term," whereas "[s]ubstantive unconscionability exists where the challenged term is not substantively reasonable." *Id.*

The Arbitration Provision, which included a 30-day "opt out" period, is not procedurally unconscionable. "If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability." *Law Offices of Daniel C. Flint, P.C. v. Bank of Am., N.A.*, No. 15-13006, 2016 U.S. Dist. LEXIS 49426, at *20 (E.D. Mich. Apr. 13, 2016). Both the 2014 and 2015 Agreements gave Plaintiffs ample opportunity to opt out of the Arbitration Provision. For example, both Agreements included the following warning in bold typeface at the very beginning of the document:

> PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. . . . IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.

(R. 17-5, PID 302, 326.) And the instructions for opting out of the Arbitration Provision were not vague or ambiguous (and were the same in both Agreements):

> Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. mail . . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You

> understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.

(R. 17-5. PID 319, 346.) Again, the Plaintiffs had ample opportunity to opt out of binding arbitration, and this opportunity was communicated to them clearly in the Agreements. Some drivers in fact did opt out. (R. 17-5, PID 294.) There was no time limit for the Plaintiffs to review the Agreements. Thus, the Court does not find that the Arbitration Provision is procedurally unconscionable.

Nor is the Arbitration Provision substantively unconscionable. Plaintiffs first argue that "the arbitration fee provisions require costs to be shared unless otherwise required by law," and "[a]llowing Uber to impose substantial forum costs on the drivers would chill them from exercising their rights." (R. 20, PID 384.)

The Court disagrees. Plaintiffs' characterization is based on an incomplete reading of the fee-splitting provision, which provides, in relevant part:

> In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law. Any disputes in that regard will be resolved by the Arbitrator.

(R. 17-5, PID 319.) Thus, Uber has agreed to pay fees where the law so requires, and will otherwise generally pay half of the fees for arbitration. To speculate that this arrangement would result in prohibitive costs for the Plaintiffs is not enough to make the provision substantively unconscionable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").

Plaintiffs next argue that the Arbitration Provision's class-action waiver is substantively unconscionable. That waiver, as set forth in the 2014 Agreement, provides:

> IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber. It also precludes you from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else.

(R. 17-5, PID 315.) The waiver contained in the 2015 Agreement is similar in all material respects.[1]

The Supreme Court has held that class-action waivers in FAA-governed arbitration agreements are enforceable. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011), the Court considered whether the FAA preempted California state law prohibiting class-action waivers. The Court observed, "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343. One of those objectives "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* Therefore, "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.*; *see also Sanchez*, 353 P.3d at 750 (acknowledging that "*Concepcion* clarifies the limits the FAA places on [California] state unconscionability rules as they pertain to arbitration agreements.").

---

[1] The waiver provision in the 2015 Agreement reads, "IMPORTANT: This Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis, except as provided below, pursuant to the terms of the agreement unless you choose to opt out of the Arbitration Provision. Except as provided below, this provision will preclude you from bringing any class, collective, or representative action (other than actions under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq. ("PAGA)) against the Company or Uber, and also precludes you from participating in or recovering relief under any current or future class, collective, or representative (non-PAGA) action brought against the Company or Uber by someone else." (R. 17-5, PID 340.)

Similarly, in *American Express Co. v. Italian Colors Restaurant*, — U.S. —, 133 S. Ct. 2304, 2308 (2013), the Court considered the Second Circuit's conclusion that because plaintiffs "had established that 'they would incur prohibitive costs if compelled to arbitrate under the class action waiver,' the waiver was unenforceable and the arbitration could not proceed." (citation omitted). Though the plaintiffs argued that "requiring them to litigate their claims individually—as they contracted to do—would contravene the policies of the antitrust laws," the Court reasoned that "courts must 'rigorously enforce' arbitration agreements according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id.* at 2309 (citations omitted). And "[n]o contrary congressional command requires us to reject the waiver of class arbitration here." *Id.*

Plaintiffs made no mention of any such contrary congressional command in their response brief. But, on the eve of the hearing, Plaintiffs filed a "Notice of Supplemental Authority" identifying the case of *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), in which the Seventh Circuit found a mandatory class action waiver to be invalid under the National Labor Relations Act. (R. 27.) "Supplemental Authority" is not an accurate term for this filing because the case supports an argument that was not made in Plaintiffs' response brief. Further, *Lewis* issued on May 26, 2016, over two months before Plaintiffs' response brief was due and nearly seven months before the hearing. The Court is not inclined to deny Defendants' motion based on arguments that Plaintiffs could have developed in their response brief. *See Bruster v. Uber Tech. Inc.*, No. 15-cv-2653, 2016 U.S. Dist. LEXIS 101312, at *3 (N.D. Ohio Aug. 2, 2016) ("[T]he idea underlying *Lewis*, that arbitration clauses that limit employees' rights under the National Labor Relations Act are invalid and unenforceable, could have, with due diligence, been offered in opposition to arbitration.").

Even if the Court were to consider this late filing, it would not change the result. In *Lewis*, an employee of Epic Systems Corporation sought to invalidate a mandatory class action waiver. Epic had sent via email an arbitration agreement "mandating that wage-and-hour claims could be brought only through individual arbitration and that the employees waived 'the right to participate in or receive money or any other relief from any class, collective, or representative proceeding.'" 823 F.3d at 1152. Epic told the employees they would be "deemed to have accepted this Agreement" if they continued to work at Epic, and "gave the employees no option to decline if they wanted to keep their jobs." *Id.* When the plaintiff-employee brought suit against Epic in federal court under the Fair Labor Standards Act, 29 U.S.C. § 201, Epic sought to compel arbitration. The employee responded that the class action waiver violated the National Labor Relations Act, 29 U.S.C. § 151.

The Seventh Circuit agreed that the class action waiver violated the NLRA. The court began with Section 7 of the NLRA, which provides, "Employees shall have the right to self-organization . . . to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA further provides that it "shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. §158(a)(1). The Seventh Circuit concluded that "The NLRA's history and purpose confirm that the phrase 'concerted activities' in Section 7 should be read broadly to include resort to representative, joint, collective, or class legal remedies," and "[a]long with Section 8, it renders unenforceable any contract provision purporting to waive employees' access to such remedies." *Lewis*, 823 F.3d at 1153–1154.

The waiver in the Epic agreement violated Section 7, the Seventh Circuit held, because it meant that "no matter where the claim is brought, the plaintiff may not take advantage of any collective procedures available in the tribunal." *Id.* at 1155. The Seventh Circuit did acknowledge that the Ninth Circuit held in *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014) that an agreement mandating individual arbitration did not violate the NLRA where it contained an opt-out provision, but stated that decision conflicted with an older Seventh Circuit case. *Id.* (citing *NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942)). But this Court, in the absence of Sixth Circuit case law to the contrary, *see Schnaudt v. Johncol, Inc.*, No. 2:15-cv-2619, 2016 U.S. Dist. LEXIS 132321, at *28 (S.D. Ohio Sep. 27, 2016) (discussing circuit split and noting that the Sixth Circuit "has not directly addressed the question"), concludes that an opt-out provision is still a valid way to distinguish *Lewis*'s reasoning.

In *Johnmohammadi*, a Bloomingdale's employee received as part of her initial package a document describing the company's dispute resolution program. The documents informed her that she agreed to resolve all disputes through arbitration and waived her right to class-wide arbitration unless she returned an opt-out form within 30 days. *Johnmohammadi*, 755 F.3d at 1074. Based on the opt-out provision, the Ninth Circuit found that Bloomingdale's had not interfered with the employee's rights under the NLRA: the employee was not required to accept the class-action waiver as a condition of employment and she had the opportunity to make a fully informed decision about whether to accept the waiver or opt out. *Id.* at 1076. Thus, the class-wide arbitration waiver did not violate the FLSA.

Even when the Ninth Circuit followed *Lewis*'s reasoning in *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 984 (9th Cir. 2016), it acknowledged in a footnote that *Johnmohammadi*'s holding was still valid. *Morris*, 834 F.3d at 982 n.4 ("[T]here was no § 8 violation in

*Johnmohammadi v. Bloomingdale's, Inc.* because the employee there could have opted out of the individual dispute resolution agreement and chose not to."). The Ninth Circuit's opinion in *Mohamed* also affirms that the opt-out provision is still a valid basis to distinguish *Lewis*. *See Mohamed*, 836 F.3d at 1112 n.6 ("Even if the argument had been properly raised, however, the option to opt out meant that Uber drivers were not required 'to accept a class-action waiver as a condition of employment,' and thus there was 'no basis for concluding that [Uber] coerced [Plaintiffs] into waiving [their] right to file a class action' in violation of the NLRA." (citations omitted)).

"Various district courts have followed, distinguished, or declined to adopt *Lewis*'s holding." *Gaffers v. Kelly Services*, No. 16-cv-10128, 2016 U.S. Dist. LEXIS 112789, at *21 (E.D. Mich. Aug. 24, 2016) (collecting cases). In this case, the Court finds *Lewis* (and *Gaffers*) distinguishable on the basis of the opt-out provision, which was clearly presented to Plaintiffs in both the 2014 and 2015 Agreements. *See Bruster*, 2016 U.S. Dist. LEXIS 101312, at *6 (reaching the same result). In other words, class or collective action is available to any Uber driver who voluntarily opted out of the arbitration provision. Indeed, counsel for Defendants advised at oral argument that such collective actions are being pursued in at least two jurisdictions. Accordingly, the Court concludes that the Arbitration Provision is not invalid nor substantively unconscionable based on the class-action waiver. *See Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 600 (6th Cir. 2013) ("[T]he absence of a class-action right does not render an arbitration agreement unenforceable." (citing *Italian Colors*, 133 S. Ct. at 2309)).

**III. CONCLUSION**

In sum, the Court finds that the Arbitration Provision clearly and unmistakably delegates the gateway issue of arbitrability to an arbitrator. And because the provision is not

unconscionable or illegal under the NLRA, the Court must enforce it by compelling arbitration. Therefore, the Court does not reach the merits of the case, nor Plaintiffs' argument that Uber is not a third-party beneficiary of the Agreements.[2] *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1276 (6th Cir. 1990).

Accordingly, IT IS ORDERED that Defendants' Motion to Compel Arbitration (R. 17) is GRANTED. This case is DISMISSED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

Dated: December 27, 2016

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 27, 2016.

s/Keisha Jackson
Case Manager

[2] Even if the Court were to reach the issue, the Arbitration Provision, in both the 2014 and 2015 Agreements, expressly provides that Uber is an intended third-party beneficiary of the Arbitration Provision. (R. 17-5, PID 317, 343.) Again, the Arbitration Provision is severable from the rest of the Agreement; therefore, Plaintiffs' attempt to use language from outside of the provision to invalidate it is unavailing. *See Nitro-Lift Techs., LLC v. Howard*, 133 S. Ct. 500, 503 (2012).